# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JEAN GERMAIN | * | |
| Plaintiff | * | |
| v | * | Civil Action No.JFM-12-3240 |
| KEITH ARNOLD, et al. | * | |
| Defendants | * | |

***

## MEMORANDUM

Pending is defendants' motion to dismiss or for summary judgment. ECF No. 24. Also pending are plaintiff's motions for leave to file an amended complaint (ECF No. 7), for partial summary judgment (ECF No. 14), to join claim (ECF No. 16), and for a hearing (ECF No. 27). Plaintiff was provided notice that he had the right to file a response in opposition to defendants' dispositive motion (ECF No. 25) and warned of the effect of failing to do so, but has not opposed the motion.[1] For the reasons stated below, defendants' motion, construed as a motion for summary judgment, shall be granted.

## Background

Plaintiff alleges defendants, who are officers at North Branch Correctional Institution (NBCI), handcuffed him behind his back in contravention of a medical order requiring him to be handcuffed in the front due to a shoulder condition. ECF No. 1. He claims the medical order was ignored for the sole purpose of causing him unnecessary pain and emotional distress.

---

[1] In correspondence filed by plaintiff on May 20, 2013, he claims he mailed three separate declarations to the court, including a motion pursuant to Fed. Rule of Civ. Proc. 12(e), which he believes alters the time in which he is required to file a response in opposition. ECF No. 26. None of the documents referenced were docketed in this case and plaintiff subsequently filed a motion for a hearing without addressing the dispositive motion. ECF No. 27. This court is familiar with plaintiff's litigious nature and his experience in litigating his self-represented claims. It is, therefore, presumed that plaintiff is well aware of both the deadline for filing the opposition and the consequences of failing to do so. Notwithstanding his failure, this court has considered plaintiff's numerous motions in the context of the dispositive motion filed by defendants.

Additionally, he claims a policy permitting the security staff to ignore medical orders is unconstitutional. *Id*., *see also* ECF No. 7 and 14. The alleged incidents occurred in July and October of 2012.

Defendants assert that on July 16, 2012, Officer Ortt was working in Housing Unit 1, where plaintiff is assigned. The housing unit is populated by inmates on disciplinary and administrative segregation status for more than one year. In that particular housing unit, it is standard procedure to handcuff inmates behind their backs. In cases where a medical order has been written for front handcuffing, medical staff provide three copies of the order to security staff. One copy of the order is given to the inmate, another is kept in the tier officer's logbook, and the third is maintained in the housing unit's control center. The doors in Housing Unit 1 are equipped with a plastic sleeve on the outside to hold the inmate's photo identification. Any medical order regarding cuffing is folded and placed in the sleeve behind the photo, providing access to the order by officers who are charged with escorting the inmate out of the cell or the housing unit. ECF No. 24 at Ex. A.

On July 16, 2012, Ortt was the escort officer on Housing Unit 1, where work was being done to prevent inmates from pulling heaters from the walls for metal parts to make weapons. When workers reached plaintiff's cell, Ortt opened plaintiff's door and ordered him to come out of the cell to be handcuffed. Plaintiff refused to allow Ortt to apply the handcuffs behind his back and insisted he should be cuffed in front. There was no medical order requiring front cuffing in the plastic sleeve on plaintiff's cell door and when Ortt asked plaintiff to show him a

copy of the order, plaintiff refused to do so.[2] Plaintiff instead told Ortt he should ask the other officers on the tier about the manner in which he should be handcuffed. *Id.*

In instances where there is no medical order posted on the cell door or the inmate cannot or will not produce a copy of the order, the standard practice is to contact the control center to ascertain if a copy of the order is there. When Ortt did this, no medical order could be located in the control center, therefore, Ortt cuffed plaintiff behind his back. The work that took place in plaintiff's cell took approximately five minutes to complete. Plaintiff stood outside the cell on the tier and when the work was completed, he was uncuffed and placed back into his cell. While plaintiff waited for the work to be completed, he voiced no complaints regarding pain or distress to Ortt. *Id.*

On August 30, 2012, Chief of Security Keith Arnold changed the procedure for handcuffing inmates escorted from their cells in Housing Unit 1, following several instances where inmates who had been cuffed in front pursuant to medical orders used the opportunity of having their hands in front of them to assault officers who were escorting them. In response to the assaults, Arnold issued a memorandum requiring that all inmates in Housing Unit 1, including those with medical orders for front cuffing, to be cuffed behind their backs when removed from their cells for short periods of time and for movement within the housing unit. Inmates with medical orders for front cuffing are, however, accommodated through use of cuffs with a much longer chain between the wrists, making it possible for their hands to rest on their buttocks and avoiding a rearward pull of their arms and shoulders. When Housing Unit 1 inmates are removed from their cells for longer periods of time, they are restrained using three-point restraints. The use of the three-point restraints minimizes the inmate's ability to move his arms

---

[2] Plaintiff claims his copy of the medical order was confiscated on October 31, 2012, along with an administrative remedy procedure (ARP) request he wrote. ECF No. 4 at p. 5. Thus, it is clear plaintiff could have shown Ortt the order on July 16, 2012, but chose not to do so.

3

and hands because the handcuffs are attached to a waist chain and black box. While housing unit managers retain discretion to authorize front-cuffing in cases of obviously serious medical conditions which would make cuffing behind the back painful or impractical, it is correctional policy that all disciplinary segregation inmates must be handcuffed behind their back at all times during escort. Defendants assert that medical orders do not supersede security decisions. ECF No. 24 at Ex. B.

On October 30, 2012, Officer Leroy Conrad escorted plaintiff to a shower on the tier. In compliance with Arnold's August 30, 2012 memorandum, Conrad ordered plaintiff to place his hands behind his back to be cuffed. Although plaintiff complied with the order, he told Conrad, "I'm going to sue you for this." Walking to and from the shower on tier takes approximately one minute and plaintiff was cuffed during his shower. Plaintiff did not appear to be in distress nor did Conrad notice plaintiff exhibiting any signs of pain or distress. The escort to and from the shower was uneventful. *Id*. at Ex. C.

## Standard of Review

Rule 56(a) of the Federal Rules of Civil Procedure provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotations omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

**Pending Non-Dispositive Motions**

In his motion for preliminary injunction, plaintiff asserts that defendants are aware of the medical order requiring front cuffing and are ignoring it causing him to suffer physical and mental injuries. ECF No. 4. A preliminary injunction is an extraordinary and drastic remedy. *See Munaf v. Geren*, 553 U.S. 674, 689-90 (2008). To obtain a preliminary injunction, a movant must demonstrate: 1) that he is likely to succeed on the merits; 2) that he is likely to suffer irreparable harm in the absence of preliminary relief; 3) that the balance of equities tips in his favor; and 4) that an injunction is in the public interest. *See Winter v. Natural Resources Defense Council, Inc*, 555 U.S. 7, 129 S.Ct. 365, 374 (2008); *The Real Truth About Obama, Inc. v. Federal Election Commission*, 575 F.3d 342, 346 (4th Cir. 2009), vacated on other grounds, _U.S. _, 130 S.Ct. 2371 (2010), reinstated in relevant part on remand, 607 F.3d 355 (4th Cir. 2010) (per curiam). Additionally, "to survive summary judgment, he must come forward with

evidence from which it can be inferred that the defendant-officials were at the time suit was filed, and are at the time of summary judgment, knowingly and unreasonably disregarding an objectively intolerable risk of harm, and that they will continue to do so; and finally to establish eligibility for an injunction, the inmate must demonstrate the continuance of that disregard during the remainder of the litigation and into the future." *Farmer v. Brennan*, 511 U.S. 825, 846 (1994). The existence of an accommodation for medical front cuffing, along with the discretionary power provided to housing unit managers in instances of sever medical conditions to handcuff inmates in the front, and the legitimate security issues set forth by defendants in their sworn affidavits, negate the need for injunctive relief. The motion shall be denied.

Plaintiff moves to amend his complaint to add as defendants Warden Shearin, whom he alleges has refused to enforce plaintiff's front cuff order despite plaintiff's complaints regarding same; and Corporal B. Fann, whom plaintiff alleges cuffed him in front on his way to the shower on November 23, 2012, and refused to do the same on the escort back to the cell because there was no medical order in the housing unit. ECF No. 7. The motion will be granted, but the claims against Shearin and Fann will be examined based on the record without requiring service or a response.

Plaintiff's motion for partial summary judgment seeks a ruling from this court that defendants are liable because it is undisputed that he suffers from shoulder pain, there is a medical order requiring front cuffing issued on April 28, 2012, Chief of Security Arnold's order waived all medical orders, and plaintiff has suffered pain as a result. ECF No. 14. As there is no evidence of an Eighth Amendment violation in this case, plaintiff's motion shall be denied.

In his motion to join claim, plaintiff seeks to add an unrelated claim alleging that defendant Conrad retaliated against him for the instant lawsuit. ECF No. 16. Plaintiff alleges

that on January 30, 2013, he had an appointment to see Dr. Ottey and Conrad was assigned to escort him to the appointment. He claims Conrad approached his cell and remarked, "this is how much I care about your lawsuit, if you wanna (sic) see that Nigga (sic) doctor you gonna (sic) have to see him cuffed from the back." *Id*. at p. 2. When plaintiff stated that cuffing from the back caused him pain, he claims Conrad told him, "I don't give a shit about your pain." *Id*. Plaintiff claims Conrad then placed a "bubble" in front of his cell door and stated, "this is what you get since you like to file lawsuits." *Id*. Plaintiff claims that as a result of Conrad's actions he was unable to obtain pain medication and receive treatment for a swollen right knee and foot. *Id*. at p. 3. The motion was filed on February 4, 2013, five days following the incident. The motion shall be denied as the claim is unrelated and clearly has not been addressed through the administrative remedy procedure as required by 28 U.S.C. §1915. Plaintiff remains free to file a separate action regarding this claim at a later date.

## Analysis

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003) citing *Wilson v. Seiter*, 501 U.S.294, 297 (1991). In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but

7

failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *See Farmer*, 511 U.S. at 839– 40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virgiinia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995) *quoting Farmer* 511 U.S. at 844. If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *See Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *Brown v. Harris*, 240 F. 3d 383, 390 (4th Cir. 2000); citing *Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken).

The instant case does not concern the quality of medical care provided; rather, it concerns an allegation that correctional staff have ignored a valid medical order. "Section 1983 liability on the part of the supervisory defendants requires a showing that: (1) the supervisory defendants failed promptly to provide an inmate with needed medical care, (2) that the supervisory defendants deliberately interfered with the prison doctors' performance, or (3) that the

8

supervisory defendants tacitly authorized or were indifferent to the prison physicians' constitutional violations." *Miltier v. Beorn*, 896 F. 2d 848, 854 (4th Cir. 1990) (internal citations omitted); *see also Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir.1984).

Plaintiff asserts that the refusal to handcuff him in front on the two occasions alleged caused him physical pain and emotional distress. The evidence before this court, however, does not support that allegation. Defendants assert, and plaintiff does not dispute, that he was in no apparent distress on the two occasions he was handcuffed behind his back. Additionally, plaintiff does not allege that he was suffering from so serious a medical condition that handcuffing him from behind would be an obvious cause of pain, *e.g.*, plaintiff was not suffering from a dislocated shoulder or broken arm. Moreover, plaintiff's claim that the medical order was not followed after he was asked for a copy of the order and refused to provide it, appears to be an attempt to manufacture a lawsuit. The purpose of legal remedies is not to browbeat correctional officials into compliance with prisoner requests, but to remediate an actual injury. In the instant case there is no evidence plaintiff suffered any real harm as a result of defendants' actions. Defendants are, thus, entitled to summary judgment in their favor. Plaintiff's request for a hearing on this matter is consequently denied.

___June 11, 2013_____       ____/s/_____  
Date      J. Frederick Motz  
     United States District Judge